UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRANOVATIONS, INC., a Florida
corporation,

                    Plaintiff,

vs.                                 Case No.  2:12-cv-306-FtM-29CM

ONTEL PRODUCTS CORPORATION, a New
Jersey Corporation,

                    Defendant.
_____

## OPINION AND ORDER

    Plaintiff Branovations, Inc. (Branovations or plaintiff)
filed an Amended Complaint (Doc. #3) against Defendant Ontel
Products Corp. (Ontel or defendant) alleging a count of
infringement of U.S. Patent No. 8,152,591 (the '591 Patent). Ontel
filed an Answer and Affirmative Defenses (Doc. #12), as well as a
Counterclaim seeking declaratory judgments of invalidity and non-
infringement. (Doc. #12.)  The matter is now before the Court on
cross-motions for summary judgment (Docs. ## 55, 59).  For the
reasons set forth below, the summary judgment motions are denied.

### I.  Summary Judgment Principles

    Summary judgment is appropriate only when the Court is
satisfied that "there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(c).  "An issue of fact is 'genuine'' if
the record taken as a whole could lead a rational trier of fact to

find for the nonmoving party." <u>Baby Buddies, Inc. v. Toys "R" Us, Inc.</u>, 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322; <u>Hilburn v. Murata Elecs. N. Am., Inc.</u>, 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party.  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007); <u>Tana v. Dantanna's</u>, 611 F.3d 767, 772 (11th Cir. 2010).  However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment."

St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).   "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.  Motions to Strike and Exclude Evidence

Before the Court can decide the cross-motions for summary judgment, it must first determine the record which may be considered.  Therefore, the Court first considers Plaintiff's Objections and Motion to Strike Portions of Defendant's Motion For Summary Judgment (Doc. #69), which incorporated plaintiff's Motion In Limine To Exclude the Expert Report and Expert Testimony of Robert Lyden (Doc. #57).  Defendant filed responses in opposition to both motions (Docs. ## 62, 70).

### A.  The Ross Declaration

Plaintiff seeks to strike the Declaration of Marla Ross (the Ross Declaration) (Doc. #59-8) filed in support of defendant's motion for summary judgment.  Branovations contends that the Declaration is improper because it was filed four days after the

magistrate judge had denied Ontel's request to depose Ms. Ross after the close of discovery. (Doc. #69, p. 3.) The Court disagrees.

While the magistrate judge denied plaintiff's request to depose Ms. Ross after the close of the discovery period, this cannot be read so as to preclude plaintiff from obtaining her declaration. Denial of the benefit of the Court's discovery mechanisms does not foreclose unilateral discovery efforts which do not invoke the court's formal discovery processes. The motion to strike the Ross Declaration is **denied**.

**B.  Internet Exhibits Attached to the Lyden Declaration**

Plaintiff seeks to strike a video and several internet printouts which purport to show the use and sale of alleged prior art products prior to 2009. Plaintiff asserts that these have not been authenticated, are inadmissible hearsay, and are unreliable and prejudicial. A district court may consider a hearsay statement in deciding a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form. Jones v. UPS Ground Freight, 683 F.3d 1283, 1293-94 (11th Cir. 2012). This appears to be the case with these exhibits, and therefore the motion will be **denied** as to them.

**C.  The Lyden Declaration**

Plaintiff adopts and incorporates its prior motion in limine to exclude the testimony of defendant's expert, Robert M. Lyden.

Thus, plaintiff seeks to exclude Lyden's testimony at trial and preclude consideration of his evidence in determining the summary judgment motions.

The admission of expert testimony is governed by Fed. R. Evid. 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

As the Supreme Court recognized in Daubert v. Merrell Dow Pharm., Inc., Rule 702 contemplates that the district court will serve as the gatekeeper to the admission of scientific testimony to ensure that any and all expert testimony is both relevant and reliable. 509 U.S. 579, 589 (1993). See also Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1183 (11th Cir. 2013).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*), cert. denied, 544 U.S. 1063 (2005). Expert testimony is

admissible if (1) the expert is qualified to testify on the topic at issue, (2) the methodology used by the expert is sufficiently reliable, and (3) the testimony will assist the trier of fact. Tampa Bay Water, 731 F.3d at 1183 (citing City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 568 (11th Cir. 1998)).  "The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1261 (11th Cir. 2004).  See also McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002).  The admission of expert testimony is a matter within the discretion of the district court, which is accorded considerable leeway in making its determination. Cook v. Sheriff of Monroe County, 402 F.3d 1092, 1103 (11th Cir. 2005); Frazier, 387 F.3d at 1258.

First, plaintiff contends that Lyden does not qualify as an expert in clothing or accessory design. (Doc. #57, p. 1.) Lyden started working as an inventor in the fields of footwear and apparel in 1985.  Over the course of his career, Lyden has been identified as the inventor on fifty-one patents, ten of which are directed to inventions in apparel, particularly athletic shorts, pants, and underwear. (Doc. #59-1, p. 4.)  Furthermore, Lyden spent six years assisting Nike's in-house and external patent counsel with identifying patentable designs and inventions,

screening outside inventors, and assisting with patent prosecution and litigation. (Doc. #59-1, pp. 3-4.) Based on Lyden's disclosed field of technical expertise, he has sufficient knowledge and experience to qualify as an expert in the field of clothing and accessory design.

Second, plaintiff contends that there is no need for expert testimony to explain the technology at issue, so none should be permitted. (Doc. #57, p. 3.) "In many patent cases expert testimony will not be necessary because the technology will be 'easily understandable without the need for expert explanatory testimony.'" Centricut, LLC v. Esab Grp., Inc., 390 F.3d 1361, 1369 (Fed. Cir. 2004) (quoting Union Carbide Corp. v. Am. Can Co., 724 F.2d 1567, 1573 (Fed. Cir. 1984)). The simplicity of the technology at issue may negate the **need** for expert testimony, but does not foreclose the use of an expert if it will assist the trier of fact. See Sundance, Inc. v. DeMonte Fabricating Ltd., 550 F.3d 1356, 1361 (Fed. Cir. 2008) (because the issues of patent infringement and validity are analyzed in great part from the perspective of a person of ordinary skill in the art, testimony explaining the technical evidence from that perspective may be of great utility to the factfinder).

Here, there is a dispute as to the level of ordinary skill in the art. Despite the simplicity of the technology, Lyden's testimony may assist the trier of fact in understanding any of the

underlying technical questions, such as the nature of the claimed invention, the scope and content of prior art, the differences between the claimed invention and the prior art, and the motivation of one of ordinary skill in the art to combine these references to achieve the claimed invention.  See Sundance, 550 F.3d at 1363-64. Therefore, plaintiff's motions to strike and exclude Lyden's expert testimony are **denied.**

Finally, plaintiff asserts that Lyden's report should be excluded from summary judgment consideration because it addresses the ultimate issues of infringement and validity without a technical analysis.  (Doc. #57, p. 4.)  While the report itself may or may not be admissible, Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue," and the Federal Circuit has approved expert testimony regarding the ultimate issues of infringement and validity provided that the expert is qualified to testify in the relevant field.  See Sundance, 550 F.3d at 1364.  While admissible, it is within the discretion of the trier of fact to give expert testimony little weight if it determines that the expert's opinions are unsupported by corroborating references.  Velander v. Garner, 348 F.3d 1359, 1371 (Fed. Cir. 2003).  See also Cephalon, Inc. v. Watson Pharms., Inc., 707 F.3d 1330, 1338 (Fed. Cir. 2013) (the lack of factual support for expert opinion going to factual determinations may render the testimony of little probative value

-8-

in a validity determination); <u>Newell Cos. v. Kenney Mfg. Co.</u>, 864 F.2d 757, 787-88 (Fed. Cir. 1988) ("Determining the weight and credibility of the evidence is the special province of the trier of fact. The trier of fact must not only identify the prior art, its scope and content, but it must also weigh all the evidence, impose the viewpoint of the person of ordinary skill, and determine if the burden has been met.").

As previously discussed, Lyden has sufficient knowledge and expertise to qualify as an expert in the field; thus, his opinion testimony may address the ultimate issues of validity and infringement. Lyden's declaration provides an analysis of the relevant claim language and prior art and uses that analysis to justify his opinion. It is up to the trier of fact to determine if Lyden's opinions are adequately supported and the weight they should be afforded. Therefore, plaintiff's motion to exclude Lyden's expert report and testimony is **denied.**

### III.  Background

The following background facts appear to be undisputed in the record:

### A.  The '591 Patent

The U.S. Patent and Trademark Office (USPTO) issued the '591 Patent, titled "Garment and Brassiere Accessory," to Michelle E. De Sousa (Mrs. De Sousa) and Jose De Jesus De Sousa (Mr. De Sousa) (collectively "the De Sousas") on April 10, 2012. ('591 Patent.)

The patent describes a woman's garment, commonly referred to as a mock camisole,[1] "that attaches to a brassiere and simulates a camisole or tank top and covers a user's chest area and/or cleavage, thereby allowing the user to wear short-cut tops and dresses in formal or any other situation that requires a modest attire." ('591 Patent, 1:17-21.)  The garment is comprised of a small piece of cloth that is substantially triangular in shape having attachment straps extending from the upper corners of the undergarment that may be looped around the shoulder straps of a brassiere in order to cover a woman's cleavage.  The garment may also include a lower corner that can be looped around and secured to the center portion of a brassiere. ('591 Patent, at [57].)  The claims at issue state as follows:

> 1. A brassiere garment accessory comprising:
>     a body having a front surface, a rear surface, an upper edge, at least two side edges, and at least two upper corners at distal ends of the upper edge and at least one lower corner;
>     at least one attachment strap extending from each of the at least two upper corners, the at least one attachment strap having a proximal portion coupled to the body and a distal portion extending away from the body along the upper edge; and
>     at least one fastener located on the distal portion of the at least one attachment strap that facilitates coupling of the at least one fastener located on the distal portion of the at least one attachment strap to at least one fastener located on at least one of the proximal portion of the at least one attachment strap and the body of the brassiere garment accessory.

---

[1]A camisole is a sleeveless undergarment for women which normally extends no lower than a woman's waist or hips. (Doc. #59-1, p. 7.)

2. A brassiere garment accessory of claim **1** further comprising: an upper band located along the upper edge of the body.

3. A brassiere garment accessory of claim **2** wherein: said upper band has elastomeric qualities.

6. A brassiere garment accessory of claim **1** wherein: the body further comprises at least one outer layer and at least one inner layer.

9. A brassiere garment accessory of claim **1** wherein: the body further comprises at least one lower corner.

11. A brassiere garment accessory comprising:
    a body having a front surface, a rear surface, an upper edge, at least two side edges, and at least two upper corners at distal ends of the upper edge;
    at least one attachment strap extending from each of the at least two upper corners, the attachment strap having a proximal portion coupled to the body and a distal portion extending away from the body along the upper edge; and
    at least one fastener located on the distal portion of the attachment strap that facilitates coupling of the at least one fastener located on the distal portion of the at least one attachment strap to at least one fastener located on at least one of the proximal portion of the at least one attachment strap and the body of the brassiere garment accessory; wherein at least a portion of the body comprises at least one inner layer and at least one outer layer; and the upper edge has elastomeric qualities.

12. A brassiere garment accessory of claim **11** further comprising: an upper band located along the upper edge of the body.

13. A brassiere garment accessory of claim **12** wherein: said upper band has elastomeric qualities.

18. A brassiere garment accessory comprising:
    a body having a front surface, a rear surface, an upper edge, at least two side edges, and at least two upper corners at distal ends of the upper edge and at least one lower corner; and
    at least one attachment strap extending from each of the at least two side edges, the attachment strap having

-11-

a proximal portion coupled to the body and a distal portion extending away from the body along the upper edge the at least one attachment strap further having at least one fastener located on a distal portion of the at least one attachment strap that facilitates coupling of the at least one fastener located on the distal portion of the at least one attachment strap to at least one fastener located on at least one of a proximal portion of the at least one attachment strap and the body of the brassiere garment accessory.

19. A brassiere garment accessory of claim **18,** wherein at least a portion of the body comprises at least one inner layer and at least one outer layer.

20. A brassiere garment accessory of claim **18,** further comprising a plurality of fasteners located on the proximal portion of the attachment strap and at least one fastener located on the distal portion of the attachment strap.

('591 Patent, 6:1-8:17.)  As shown below, Figure 1 provides a rear view of the claimed device and Figure 3 provides a front view of the claimed device attached to a brassiere:



FIG. 1



FIG. 3

Following the issuance of the '591 Patent, the De Sousas granted an exclusive license, including the right to enforce the patent, to their company, Branovations. (Doc. #3-1, pp. 10-12.) Branovations had begun selling the mock camisole claimed by the '591 Patent under the name "Cleava" on August 4, 2009. The Cleava is currently available for purchase online and at select retailers nationwide.

**B. The Accused Product**

Ontel was founded by Ashok Khubani (Khubani) in 1994 and currently sells approximately fifty product lines through traditional retail and direct-to-consumer channels, such as short form infomercials and internet sales. (Doc. #59-7, p. 2.) In early 2010, Ontel began marketing and selling a mock camisole under the name "Cami Secret" after Khubani saw an advertisement for a third party's product in a catalog. (Doc. #68-3, p. 7.) The first version of the Cami Secret (Version 1) attached to a woman's

brassiere by means of a plastic clip.  Shortly after the launch of Version 1, Ontel received negative feedback regarding the product and determined that it was in need of improvements.  (Doc. #68-3, p. 17.)  In July 2010, Ontel purchased three samples of the Cleava to determine if it could be used to improve Version 1 of the Cami Secret.   (Doc. #68-3, p. 46.)   Ontel ultimately decided to incorporate the fastening system used by the Cleava into the Cami Secret and started marketing a second version of the product (Version 2) in October 2010.  (Doc. #68-3, p. 46.)

In order to facilitate the manufacture and release of Version 2, Ontel's overseas manufacturers requested additional pieces of the Cleava for copying.  (Doc. #68-4, p. 2.)  Ontel also sought a legal opinion to determine if it would be infringing upon Cleava's then-pending patent application if it duplicated the snaps on the Cleava product.  (Doc. #68-5.)  Following the implementation of the new fastening system, the retail packaging for the Cami Secret was altered to let customers know that the product now featured snaps. (Doc. #68-2, p. 54; Doc. #68-6.)   The improvement to the Cami Secret was well received and customer satisfaction was "dramatically better."  (Doc. 68-7.)  Ontel also released a third version of the Cami Secret (Version 3), which has a piece of fabric folded over the top of the attachment straps.  Only Versions 2 and 3 are accused of infringement.



Version 2 with Lace
(front)



Version 3 (front)



Version 2 with Lace
(back)



Version 3 (back)

## IV.  Discussion

The Amended Complaint (Doc. #3), supplemented by the Joint Pretrial Statement (Doc. #73, p. 3), asserts that defendant has and continues to infringe at least claims 1, 2, 3, 9, 11, 12, 13, 18, 19, and 20 of the '591 Patent, either literally or under the doctrine of equivalents.  Plaintiff seeks summary judgment as to Version 2 and Version 3.  Defendant denies infringement, and seeks a declaratory judgment that its product does not infringe and that the '591 Patent is invalid for lack of novelty, anticipation, obviousness, and defective patent disclosure.  Defendant seeks summary judgment as to its counterclaim.

After reviewing the record, the Court concludes that the parties got it right in the Joint Pretrial Statement.  There are remaining factual disputes (Doc. #73, p. 19) which are material to the claim and counterclaims.  These disputed material facts preclude granting summary judgment in favor of either party.

Accordingly, it is now

**ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (Doc. #55) is **DENIED**.

2.  Plaintiff's Motion *In Limine* To Exclude the Expert Report and Expert Testimony of Robert Lyden (Lyden) (Doc. #57) is **DENIED.**

**3.**  Defendant Ontel Products, Corporation's Motion for Summary Judgment (Doc. #59) is **DENIED**

4.  Plaintiff's Objections and Motion to Strike Portions of Defendant's Motion For Summary Judgment (Doc. #69) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this   3rd   day of February, 2014.


_____

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE


Copies:

Counsel of record